Earnest GARCIA et al., Appellants,

v.

SUN OIL COMPANY, Appellee.

No. 6100.

Court of Civil Appeals of Texas.

Beaumont.

March 7, 1957.

Rehearing Denied April 3, 1957.

Magus F. Smith, McAllen, W. H. Wren, Hamilton, R. M. Bounds, McAllen, for appellants.

Charles F. Heidrick, Beaumont, Williams, Lee & Kennerly, Thomas H. Lee and Jesse J. Lee, Houston, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from an order granting a temporary writ of injunction in the district court of Hardin County.

On May 24, 1954, the appellants here, Earnest Garcia and three other persons, filed this suit in the district court of Hardin County in trespass to try title, suing for title and possession of the Gregorio Garcia League in Hardin County, defendants in that action being the appellee Sun Oil Company and almost one thousand other persons. On February 25, 1955 the Sun Oil Company answered by pleas of not guilty and general denial, and also reconvened by cross action for title and possession of the Gregorio Garcia League in Hardin County against all those parties as.plaintiffs in the original action. The plaintiffs in the original suit answered the cross action by pleas of not guilty and general denial by pleadings filed June 12, 1956. On June 14, 1956, the three plaintiffs mentioned first above, J. Garcia, Pauline Garcia Taylor and her husband, Ray Taylor, were dismissed as parties to the lawsuit. On June 14, 1956 the original plaintiffs in the trespass to try title suit took a non-suit, leaving the case before the court in form of cross actions of this appellee, Sun Oil Company, and various other original defendants, who also filed cross actions. On September 14, 1956, appellee Sun Oil Company filed its petition for temporary injunction against the appellants, Earnest Garcia et al., involving only a described 448.33 acre tract out of the Gregorio Garcia League. The appellants answered this petition first by a pleading which is in the nature of a plea in abatement, then by general denial, special exception to the description of the land involved in the application for temporary injunction and further special defenses. We think the pleadings of the parties in this matter are vital to the determination of this appeal, and for that reason we set out in detail both pleadings.

The petition of the appellee, omitting the formal parts thereof, alleged as follows:

"I

"Your petitioner is the oil, gas and mineral lessee of the record title holding the following described tract of land, which tract is a portion of the land in controversy herein:

"448.33 acres of land, more or less, out of Tract No. 3 of Subdivision of said Gregoria Garcia League, described as follows:

"Beginning at the northeast corner of said Tract No. 3, which is also the southeast corner of Tract No. 4 of said league;

"Thence westerly parallel with south boundary line of the said League to the northwest corner of said Tract No. 3, which point is also the southwest corner of Tract No. 4;

"Thence southwardly with the west line of said League far enough that running a line thence across said League parallel with its south boundary line to the east boundary line thereof, and from thence northwardly to the place of beginning will contain 458.33 acres of land; save and excepting herefrom 10 acres of land described particularly as follows:

"Lots No. Nine and Ten (9 & 10) of the north half of said Tract No. 3 of the said Gregoria Garcia League, each of said lots containing five (5) acres and described as:

"Beginning at a point on the western boundary line of said League, which point is distant 3600 and 82/100 feet north of the southwest corner of said League;

"Thence eastwardly with the south line of the north half of Tract No. 3 a distance of 3027 and 2/10 feet to a point on said line, which point is the southwest corner of Lot No. 28 of said north half of Tract No. 3;

"Thence northwardly on a line parallel to the eastern and western boundary lines of said League for a distance of 143 and 74/100 feet to the southwest corner of Lot No. 27 of said north half of said Tract No. 3;

"Thence westwardly on line parallel to the northern and southern boundary line of Lots 8 and 11 of said north half of said Tract No. 3 a distance of 3600 and 82/100 feet to the southwest corner of said Lot No. 8, which is on the west boundary line of said League;

"Thence southwardly on said line 143 and 74/100 feet to the place of beginning, being the same ten (10) acres conveyed to P. Lynch Garrett by Henry C. Mayer by deed dated September 23, 1905 and recorded in Volume 58, Page 165 of Hardin County Deed Records.

"The plaintiffs are mere trespassers as to said tract and have no title nor colorable claim of title thereto. Alternatively, your petitioner would show, that even if the plaintiffs should be adjudged to have title in the hearing of this case upon its merits, which your petitioner denies, your petitioner is then a cotenant in the very claim asserted by the plaintiffs, and entitled to possession of the above described tract for that reason. In spite of these facts, the plaintiffs have recently, and without the consent of your petitioner or any of the other owners of the above described tract, taken possession thereof, and plaintiffs have forcibly and unlawfully withheld the possession thereof from your petitioner, making known to your petitioner that their action in so doing was upon the advice of their counsel, and making known their intention to continue to so forcibly and unlawfully withhold such possession. Your petitioner would show the Court further that unless plaintiffs are enjoined by this Court from unlawfully withholding possession from your petitioner and forcibly interfering with your petitioner's efforts to lawfully and peaceably enter thereupon, your petitioner will suffer great, irreparable, and irremediable damage.

"II.

"This suit was filed in this Court on or about May 29, 1954, by the plaintiffs herein against your petitioner and numerous other defendants, as named in said original petition, and thereafter, your petitioner filed

its answer and cross-action in this cause which, at all times since its filing, has been and is now pending in this Court.

"III.

"There was set down for hearing by this Court, on or about the 14th day of June, 1956, at a time when this suit had been pending over two years, a motion for summary judgment filed by your petitioner and forty other defendants, being all of those who had been served up to that time, but on that day and prior to the hearing on said motion, the plaintiffs filed their motion for non-suit, which was duly granted by this Court, leaving the case pending only on the cross-action of your petitioner and of defendant Gulf Oil Corporation, and on the petition in intervention of Lamar Palmer, et al.

"IV.

"The plaintiffs have testified by deposition in this cause that their only claim to the land in controversy is as the descendants and heirs of the original grantee of the league, one Gregorio Garcia. Plaintiffs' counsel stipulated that no claim was being asserted by way of limitation or adverse possession.

"V.

"For three entirely independent and entirely sufficient reasons, as pointed out by the several defendants in their motion for summary judgment, the said plaintiffs have and can have no title as heirs of Gregorio Garcia as a matter of law:

"1. The sworn testimony of the plaintiffs, taken in this and in other cases, definitely establishes that the alleged Gregorio Garcia through whom they claim lineage was not the Gregorio Garcia to whom the land was granted.

"2. There are of record in the Deed Records of Hardin County, Texas, three deeds from Gregorio Garcia, a certified copy of each of which is admissible in evidence as an ancient instrument, and as an ancient record, without other proof of execution and even over an affidavit of forgery, each

of which deeds and the record therefor are sufficient to prove that Gregorio Garcia divested himself of all his title to said land.

"3. There is a trespass to try title judgment in favor of William S. Opdyke, et al, from whom your petitioners hold, against:

"(a)  Earnest Garcia, a plaintiff in this cause;

"(b)  Daisy Garcia Brashier, a plaintiff in this cause being the same person as Daisy Kuehn;

"(c)  Oscar Garcia, a plaintiff in this cause;

"(d)  Roy Frazier, a plaintiff in this cause;

"(e)  Oscar Frazier, a plaintiff in this cause;

"(f)  Eugene Frazier, a plaintiff in this cause;

"(g)  Paul Garcia, a plaintiff in this cause;

"(h)  Tina Jones, a plaintiff in this cause;

"(i)  Louis Garcia, father of Elroy Garcia and Bennie Garcia, plaintiffs in this cause.

"So that, as the plaintiffs claim the land in controversy only as heirs of Gregorio Garcia, and, as they have no title as such heirs as a matter of law, the position of the plaintiffs is necessarily that of naked trespassers, or mere interlopers, as to any part of said land in controversy that they may claim, or have in their recent possession.

"VI.

"Petitioner would further show the Court that on the 6th day of September, 1956, one H. E. Dishman secured a conveyance from Mrs. Pauline Garcia Taylor and husband, Ira Raymond Taylor, of an undivided two-thirds of all the right, title and interest of the said Pauline Garcia Taylor in and to the tract of land in controversy. Your petitioner is the oil, gas and mineral lessee of the

said H. E. Dishman under a lease covering the above specifically described tract of land, said lease containing full covenants of general warranty. The said Pauline Garcia Taylor is a cotenant in any claim that the said plaintiffs may make or be able to establish as an heir of Gregorio Garcia, being a descendant of the same alleged Gregorio Garcia under whom the plaintiffs claim. So that by virtue of the said deed as well as by virtue of the judgment above described, your petitioner is necessarily a cotenant in the claim of the plaintiffs, and should the plaintiffs eventually be able to establish some right, title or interest in this land on the hearing of the merits, which is denied by your petitioner, still your petitioner would be a cotenant in the right, title or interest so established.

## "VII.

"The petitioners would further show the Court that prior to the institution of this litigation, the above described land was under the dominion and constructive possession of one Grady Grigsby, an original defendant in this cause, who was the surface owner of said land. That the said Grigsby cut timber therefrom from time to time and kept the land under constant surveillance of the employees of the said Grigsby; paid the taxes and exercised other acts of dominion and ownership; that the entry of your petitioner upon said land and the drilling thereupon for oil and gas are with the full permission and consent of the said Grigsby.

## "VIII.

"Since the voluntary dismissal of the original action by plaintiffs, and in spite of the above facts and of their own disinclination to have this case heard on its merits, the plaintiffs have, within the last few weeks, without the knowledge or consent of your petitioners or the other owners of said land, gone upon portions of the land in controversy and commenced to and did build fences along and around portions of the land in controversy herein, and did connect with fences of third parties which were already on the ground, enclosing properties of the third parties adjacent to the land in controversy, so that by so building and so connecting said fences, said above named plaintiffs, with the intention of so doing, have excluded your petitioner from the above described land to the extent that your petitioner cannot enter upon or have access to said land in the usual and ordinary way or in any other manner except by using force; that the acts of said plaintiffs in so excluding petitioner from its own property, and in so depriving your petitioner of its right to enter upon and across and to possess its own property, have caused and will continue to cause to your petitioner great damage.

## "IX.

"Your petitioner specifically avers the following;

"It is the oil, gas and mineral lessee of the record title owner of the mineral estate under the above described tract of land.

"Your petitioner, desirous of developing this land, and other tracts owned by it that are involved in this cause, for oil, gas, and mineral purposes, for itself and the other owners thereof, attempted to enter the above described land. In order to do so it was necessary to build a road from the highway (which is west of the above described land) to the proposed drill site located on the easterly portion of the land above described. Your petitioner had permission of all persons who were owners or were in possession of the land between the highway and the above described tract. Your petitioner's agents then constructed a road from the highway up to said fence, whereupon they were met by certain of the plaintiffs and their spouses. These plaintiffs then advised petitioner's agent that they would not permit petitioner to enter upon said land, and thereupon sat directly in the path of petitioner's bulldozer, rendering impossible petitioner's entry on to its own property by any means short of force. The said plaintiffs at that time advised petitioner that they were acting on the advice of their attorneys.

## "X.

"The claim of the plaintiffs is not a bona fide and colorable claim asserted by them in good faith, but is a claim such that any reasonable man would under the law necessarily realize must fail and apparently they so realize, as they were unwilling to have a hearing on the merits, denied none of the facts set out in the motion for summary judgment, but dismissed their original cause; and that since that time have fenced additional portions of said land and forcibly withhold possession thereof from the rightful owners.

## "XI.

"Petitioner would show the Court that it has acquired, at great expense to itself, an oil, gas and mineral lease on the above described tract of land, and numerous other such leases on other tracts of land involved in this cause. In the absence of the drilling operations which the plaintiffs themselves are preventing, certain of said leases will expire, causing petitioner irreparable loss of rights thereunder. On the remainder of said leases, annual delay rentals will be due to prevent the lapsation of said leases, in the absence of drilling operations.

"In spite of the colorless nature of plaintiffs' claim, the mere mechanics of securing final judgment to the land in the controversy are such that the plaintiffs could and would, postpone the time necessary for the judgment to become final, past the expiration date of certain of petitioner's leases, and past one or more delay rental dates in the remainder of petitioner's leases. The plaintiffs are insolvent and the lapsation of such leases and the expenditure by petitioner of delay rentals necessitated by plaintiffs unlawful and *foreceable* withholding of the possession of the above described land from petitioner would cause irreparable and irremediable loss and damages to your petitioner.

"Wherefore, premises considered, it is prayed that this petition be set down for hearing and that plaintiffs be notified of the time and place of said hearing, and that up-on said hearing, plaintiffs be temporarily enjoined from interfering or obstructing in any manner your petitioner's entry upon said above described land and enjoined from interfering or hindering in any manner the petitioner's subsequent operation for oil and gas upon said land, and that on a final hearing of the case on its merits that the injunction be made perpetual, and that your petitioner have judgment for costs of the suit and such other relief, general and special, legal and equitable as it may show itself entitled."

This pleading was verified by affidavit.

The answer of the appellants alleged as follows:

## "I.

"This Court should not entertain the bill in this case for the reason that the same shows on its face that it is ancillary to a suit in trespass to try title wherein the Sun Oil Company is claiming the Garcia League consisting of some four thousand two hundred (4,200) acres of land in Hardin County, Texas, and wherein these cross-defendants are claiming the same league of land. The pleading also shows on its face that these cross-defendants are in possession of said Garcia League and have the same under fence. Nowhere in said pleading is it alleged that the Sun Oil Company ever had any possession in and to the Garcia League or the particular portion thereof alleged in cross-plaintiff's petition, but this suit is for the purpose of transferring possession from these cross-defendants to the cross-plaintiffs, which a court of equity will not do in an ancillary proceeding. The sole purpose of an ancillary injunction of this type is to maintain the status quo, and the pleading shows on its face that the injunction is asked for the purpose of disturbing the status quo and permit the plaintiff, who is out of possession, to enter upon said land and commit waste during the pendency of the suit.

"Wherefore, these cross-defendants pray that the bill for temporary injunction be dismissed.

"I.

"These defendants deny each and every allegation in the application for temporary injunction contained and demand strict proof thereof.

"II.

"Further answering herein, and only in the event the court should overrule the cross-defendants' motion to dismiss, and in that event only, these cross-defendants would show that the tract of land described in Paragraph I, of the cross-plaintiff's bill sets out a purported description of land. The description as contained in said Paragraph is so vague and indefinite that it is impossible to locate said tract of land on the ground. The description calls for Tract No. 3 of a subdivision of the Gregoria Garcia League, and the description is so incomplete that an engineer cannot take the same and locate said description on the ground. Said tract has never been surveyed and no lines have ever been run. There were probably at some time purported lines run by inefficient people who were not surveyors and marked by blazes or hatchet marks on the trees, which have all ben destroyed and which were never in truth and in fact a marker, and, therefore, these cross-defendants are not in a position to determine the location of said tract of land, and in fact they are not in a position to determine whether or not said land is located on or is a part of the Garcia League which is involved in this suit. If the land is not a part of the Garcia League located in Hardin County, Texas, these cross-defendants are not claiming any interest therein.

"II.

"The Bill in this instance alleges an oil and gas lease and a license on the land described in Paragraph I, of the cross-plaintiff's Bill and under one Grady Grigsby, and in this connection the cross-defendants would show to the court that nowhere in said pleading is it alleged that Grady Grigsby ever owned or claimed any of the mineral interest under said tract of land, and these cross-defendants here now allege that the said Grady Grigsby, even by the deeds given to him by interlopers in the title to the Gregoria Garcia League, never purported to own any mineral interest in or under said tract of land, and, therefore, the lease claimed, as aforesaid, would be and is purely fictitious. In this connection the cross-plaintiffs have alleged that Grady Grigsby at one time was in possession of said tract of land, and in this regard these cross-defendants would show to the court that such possession as Grady Grigsby had when he was cutting timber on this tract of land or on the alleged tract of land, he was on said tract of land as a licensee of these cross-defendants, paying them an adequate consideration for the timbers harvested by him, and said licensee did not authorize the said Grady Grigsby to license or permit the Sun Oil Company to drill or explore for oil on this or other parts of said League of land.

"III.

"Further pleading herein these defendants would show to the court that they are in complete and absolute possession of the Gregoria Garcia League, claiming the same as direct descendants of Gregoria Garcia, the original grantee herein. That the said Gregoria Garcia and his descendants have had peaceable and adverse possession of the Gregoaia Garcia League for one hundred twenty-one (121) years, and three of these cross-defendants, to-wit, Earnest Garcia, Oscar Garcia and Paul Garcia, now have their homes on said tract of land, and their ancestors from the time the Gregoria Garcia League was granted, maintained their homes on said tract of land, and these cross-defendants now have the entire Garcia League under a substantial fence, and no other person has any possession thereof except as tenants of these cross-defendants, and the cross-plaintiff in this case has never been in possession of any part of said League except as a licensee of these cross-defendants.

## "IV.

"These cross-defendants would further show to the court that instead of being mere trespassers, as alleged by the cross-plaintiff, they are the owners and holders and now in possession of the entire Garcia League, and if the tract of land described in the cross-plaintiff's petition is a part of the Garcia League, these cross-defendants are the owners of and are now in exclusive and undisputed possession of said tract of land.

## "V.

"With reference to the allegations in Paragraph IX of the Bill for injunction herein, these cross-defendants would show to the Court that at the time specified in said paragraph a man by the name of J. H. Eastland, representing himself as the field representative and agent of the Sun Oil Company, came out to the cross-defendants' home and at the same time had with him a very large bulldozer. The said Eastland notified these cross-defendants that they were going to bull-doze all the cross-defendants' corrals, fences and outhouses out of the way and let the cross-defendants' cattle and pigs out on the commons, and for cross-defendants to remove themselves out of the path of said bulldozer. These cross-defendants allege that the said Eastland was acting for the cross-plaintiff, Sun Oil Company, in said respect, and had it not been for the good conscience of the driver of the bulldozer, the said Sun Oil Company having no conscience, and acting through the said Eastland, would have pursued the strong arm and unlawful tactics and threats then being pursued by him. Under those conditions these cross-defendants for-bade Mr. Eastland's coming on the premises.

## "VI.

"With reference to the allegations in cross-plaintiff's petition concerning the un-divided interest purportedly purchased by H. E. Dishman from Pauline Garcia Taylor, which is not admitted but denied, these cross-defendants would say, however, that if the said H. E. Dishman acquired any interest from the said Pauline Garcia Taylor, the said interest amounted to a $\frac{1}{120}$ undivided interest in the Gregoria Garcia League and no more, and in this suit the said Sun Oil Company, claiming the infinitesimal $\frac{1}{120}$ interest in said tract of land and being out of possession, is attempting by injunction to gain possession of said property from the cross-defendants herein, who own $\frac{119}{120}$ths part of the same, when it has a perfectly adequate remedy at law of partition granted it by the statutes.

## "VII.

"Further pleading herein, the cross-plaintiff, if he is a cotenant, which is not admitted but denied, is not seeking the right to enter upon said tract of land for the usual purposes for which said land is suitable, but is seeking the right to enter upon the same for the purposes of drilling and exploring for oil and gas and thus commit waste against the wishes of the cross-defendants now in possession.

## "VIII.

"These cross-defendants would further show to the court that the cross-plaintiff is not acting in good faith for the reason that he is attempting to gain possession of the above described tract of land under some sort of a technical rule of law in regard to cotenancy for the express purpose of drilling and exploring for oil and producing the same, and therefore committing waste on said tract of land over the objections of the cotenants owning $\frac{119}{120}$ths interest in said tract of land, and therefore is not in this court with clean hands. Further, the cross-plaintiff is attempting to gain possession of said property under the technical rights of a cotenant for the purpose of setting up a prior claim or perfecting other titles to the property involved in this suit, and is seeking to shift or change possession of the above described tract of land for the above described nefarious purposes by means of a temporary injunction.

"IX.

"Further pleading herein and by way of affirmative relief, these cross-defendants re-plead all of the allegations above with special reference to Paragraph V., and in addition thereto would show to the court that unless enjoined from doing so, the said J. H. Eastland, or some other agent and servant of the Sun Oil Company, will complete or attempt to complete the depridation and trespass he has heretofore attempted and will tear down and destroy the fences, corrals, outhouses and improvements of these cross-defendants during the pendency of his suit. It is too inconvenient and in law these cross-defendants should not be required to maintain a guard on said premises in order to prevent the attempted depridations and destructions by the Sun Oil Company, acting through the said Eastland. The cross-defendants are now in full and complete possession of said property, as alleged above, and as alleged by the cross-plaintiff, and these cross-defendants are entitled to have the status quo of said property and of said possession maintained until a final hearing of this suit on its merits and are entitled to an injunction restraining the Sun Oil Company, its agents, servants and employees from any forcible entry upon the Garcia League until further orders of the Court, and unless said injunction is granted these cross-defendants and their property will suffer great and irreparable loss, and their homes and improvements will be invaded in an unlawful manner, as aforesaid, and these cross-defendants are entitled to said injunction.

"Wherefore, Premises Considered, these cross-defendants pray that the cross-plaintiff take nothing by its application for temporary injunction, and that these cross-defendants have their temporary injunction, enjoining the cross-plaintiff, its agents, servants and employees, from any destruction of the cross-defendants' property and from any forcible entry upon the Garcia League during the pendency of this suit.

"The cross-defendants also pray for such other and further relief, both general and special, as in law or in equity, they may show themselves entitled to receive, and of this they will ever pray."

This pleading was also verified by affidavit.

On October 10, 1956, the appellee filed, with leave of the court, its trial amendment, to the effect that for the following three lines in its description of the land involved in the application for temporary injunction, reading as follows:

"448.33 acres of land, more or less, out of Tract No. 3 of Subdivision of said Gregoria Garcia League, described as follows:"

the following words of description were substituted:

"448.33 acres of land, more or less, out of Tract No. 3 of Subdivision of said Gregoria Garcia League as identified and described in Cause 59, U. S. Circuit Court as Beaumont, Texas, styled William S. Opdyke, et al v. Walter A. Martin, et al, certified copy of Judgment appearing of record in Volume 76, page 302 of the Deed Records of Hardin County, Texas, and as further reflected by the maps and plats of the Mayer and Kennedy Subdivision recorded in Volume 1, pages 186A and 186B of the Map Records of Hardin County, Texas, said 448.33 acres of land being further described as follows:"

The trial court overruled the appellants' plea in abatement and proceeded to a hearing on the facts. At the conclusion of the hearing the trial court granted the application of appellee Sun Oil Company for temporary injunction against the appellants conditioned upon the execution and filing of a bond by the appellee in the sum of $25,000. The judgment or order contained the following: " * * * and it appearing to the Court that the evidence and the law is with the petitioner, Sun Oil Company, and it is entitled to the temporary injunction as herein granted, the same being

within its allegations and prayers, for the reason that the original plaintiffs and cross-defendants, Ernest Garcia, et al, are wrongfully, forcibly and unlawfully withholding possession of the land described below from the said petitioner who is entitled to possession of the same; it is, therefore, ordered, adjudged and decreed that the Clerk of this Court, pending a final hearing and determination of this cause, issue a writ of injunction restraining and enjoining the said above named original plaintiffs and cross-defendants, Ernest Garcia, et al, from withholding possession from the said petitioner, Sun Oil Company, and from hindering or otherwise interfering with the said petitioner's entry upon, use, possession of, or operations upon the following described tract of land:"

The appellants have duly perfected their appeal to this court and pray that the temporary injunction be dissolved. They bring their appeal under five points of error, which are as follows:

### "First Point

"The Court did not find a reason cognizable in law or equity sufficient under Rule 683, Texas Rules of Civil Procedure to justify the Court to alter the status quo and issue the mandatory writ that was issued, and said writ is therefore void.

### 'Second Point

"The petition did not state, the evidence did not show, and the Court did not find any special facts which would be irreparable and which would show a pressing necessity for the change or shift in possession of said tract of land.

### "Third Point

"It was error for the Court to even consider the title and the respective substantive rights of the parties in the hearing on the temporary injunction.

### "Fourth Point

"If the Court should consider the title on this hearing, then the appellees must recover on the strength of their own title, and having failed to prove title from the Sovereignty of the soil or from common source, and having failed to prove any kind of possession, their title must fail.

### "Fifth Point

"The appellants by their uncontroverted verified answer proved prior possession to said property. They proved One Hundred twenty-one (121) years possession and exclusive dominion over said tract of land, which would raise every presumption against the instruments offered by the appellees.

### "Sixth Point

"Long continuous possession of and dominion over said property by appellants, with no possession or dominion whatsoever by the appellees and their predecessors in title, is sufficient to raise every presumption against the validity of the various deeds offered in evidence."

The appellee urges in its three counterpoints to the above contentions of the appellants that (1) as the record made before the court below proves irreparable damage to the appellee and a probable right in appellee irrespective of the fact that it is a cotenant of the appellants, the case was a proper one for injunctive relief granting appellee its right of possession, regardless of that fact; (2) the trial court correctly allowed the appellee to take possession of the land in controversy inasmuch as the appellee, being at most appellants' cotenant, has that right irrespective of the eventual outcome of the title litigation; (3) the writ of injunction issued by the trial court properly stated the reasons for its issuance.

It was stipulated by the parties that the appellants were withholding possession of the land from appellee; that the appellants were insolvent; that the appellants had enclosed the entire Gregorio Garcia League by a substantial fence since June 12, 1956; that the appellants do not claim a limitation

title in this cause and that their only claim is as heirs of Gregorio Garcia; that the appellee had numerous leases on other portions of the Gregorio Garcia League on which annually it will be required to pay large amounts of money to prevent the lapsation of the leases unless it is permitted to drill on the League, so as to prove up whether it is productive or non-productive territory.

On the trial the appellee introduced a regular record chain of title to the 448.33 acre tract of land in controversy. It made other proof tending to show that the claim of title asserted by the appellants, as heirs of the original patentee, was groundless. The record title introduced shows that Mrs. Pauline Garcia Taylor and her husband, original parties plaintiff in the suit, alleged by the appellants to be heirs of Gregorio Garcia, the original patentee, had granted to H. E. Dishman an undivided two-thirds interest in and to all of their right, title and interest in and to the Gregorio Garcia League. The appellee Sun Oil Company holds from Dishman an oil, gas and mineral lease containing full covenants of warranty, to the land in controversy. The appellee introduced in evidence a judgment in trespass to try title, which was rendered in favor of certain persons, through whom the appellee holds title, against all of the appellants or their ancestors, with the exception of John Warren Henry and Opal Henry Tomerlin, a daughter of Molley Garcia, who was not a party to that judgment.

■ An examination of the above pleadings and evidence adduced on the trial has convinced us that the trial court did not err in granting the temporary writ of injunction. The appellants contend under their first three points that the issuance of the temporary injunction in this case served to change the status quo of the parties, while awaiting the outcome of the main case in trespass to try title, in violation of the general rule that the issuance of a temporary injunction is for the pur-

pose of maintaining the status quo when such injunction is sought as an ancillary proceeding to another cause. With this contention we disagree. They appear to place a great deal of significance in that portion of their verified answer which asserts that the appellants have had 121 years possession and exclusive dominion of said tract of land. This statement in the answer of the appellants is not borne out by the record, which indicates at most that members of the Garcia family of the appellants have lived on some portions of the League at various intervals during the past 100 years, but that their last continuous possession of a portion of the League began in 1950 and 1951.

The appellee, however, showed a probable right of recovery in the main title suit when it shall be eventually tried, and also showed that it would probably have suffered a large expense and loss and irreparable injury if the injunction had not been granted, and if the appellants had been permitted to continue to interfere with the appellee's right to go in possession of the land and proceed with its drilling operations. Under such an unusual fact situation, it was entirely proper that the trial court protect the evident right to possession which is in the appellee by temporary writ of injunction, and at the same time protect any possible right of possession which the appellants may have by requiring a $25,000 bond to be posted by the appellee. The writ of injunction itself did not divest the appellants of possession of the Garcia League, nor disturb the possession of the appellants in the 448 acre tract named in the injunction proceeding, except to protect the appellee in the right of possession and use of the smaller tract, which it clearly had in its position as a cotenant of the appellants.

■ To warrant the issuance of a temporary writ of injunction, the applicant need only show a probable right and a probable injury. If the appellants here should prevail on final trial of the suit,

they are protected against any improvident granting of the writ and consequent loss to them by the bond posted by the appellee. In such a contingency, we believe the appellants would find added protection in the notoriously solvent condition of the appellee, Sun Oil Company. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ of injunction, and such an order will be reversed only on a showing of clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460. This principle of law has been clearly impressed upon the writer of this opinion by the Supreme Court's opinion in the Texas Foundries case, supra. There is no abuse of discretion on the part of the trial court in the issuance of a temporary injunction if the petition alleges a cause of action, and the evidence adduced tends to sustain it. Southwestern Greyhound Lines, Inc. v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235. The above principles governing the issuance of temporary writs of injunction are cited and approved in the case of Transport Company of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549. Applying these rules to the instant case, appellee alleged adequately a cause of action for issuance of the writ, and the evidence tends to support the pleading.

■ The appellants contend that the judgment of the trial court granting the injunction is fatally defective for the reason that it does not sufficiently state in the judgment itself the reasons for granting such writ, in violation of Rule 683, Texas Rules of Civil Procedure. They rely upon Kenney v. Starnes, Tex.Civ. App., 265 S.W.2d 639. We have had occasion recently to apply Rule 683, T.R.C.P., in the case of Rothermel v. Goodrich, Tex.Civ.App., 292 S.W.2d 882. We held there in agreement with the contention of the appellants that the provisions of said rule are mandatory. But we believe that the language of the judgment before us sufficiently states the reasons for granting the temporary writ of injunction. The parties joined issue by their pleadings, and the appellee met the issue by its proof, on its right to possession of this tract of land in suit, and the wrongful, forcible and unlawful withholding of possession of the land from appellee by the appellants. The trial court undoubtedly found from the evidence that the appellee had a probable right to the title and possession of the land, and that appellee had an unquestioned right of possession as a cotenant of the appellants, and was warranted in stating the reasons as it did in the judgment copied above. Under the unusual fact circumstances of this case, it would probably have served to state the reasons more fully to include the proven facts of large and irreparable loss and injury by the appellee, but we do not think the omission of such a statement is fatal to the judgment. As was noted in the opinion in Transport Company of Texas v. Robertson Transports, Inc., supra [152 Tex. 551, 261 S.W.2d 553], "If the party enjoined wishes detailed findings of fact and conclusions of law, he may seek them under the provisions of Rules 296 and 385(e)."

Appellants' points Nos. 1, 2 and 3 are overruled.

■ Under their 4th, 5th and 6th points, the appellants attack the record title which was introduced in evidence by the appellee. They make varied attacks upon the various instruments involved and in their brief reassert their claim that they have proved prior possession of the property, together with 121 years of possession and jurisdiction. We do not believe that it is either necessary or proper that we here inquire into or decide any of the appellants' various attacks upon instruments in the record title introduced on the trial by the appellee. To warrant the issuance of this temporary

writ of injunction, the appellee was under the burden only of showing a probable right of title and possession and a probable injury to it unless the writ was granted; it was not required to establish that it will finally prevail in the litigation. Rosenfield v. Seifert, Tex.Civ.App., 270 S. W. 220; Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778; High on Injunction, 4th Edition, Vol. 1, Sec. 5, p. 8; Transport Company of Texas v. Robertson Transports, Inc., supra.

The apparent regularity of the record title of appellee of the tract of land in suit in the injunctive matter could be considered by the trial court, and is considered by this court, only to the extent of determining whether the appellee showed a probable right to possession of the property in suit.

This record has further convinced us that even if the appellee had shown no probable record title to the Garcia League by the quitclaim deed from Mrs. Pauline Garcia Taylor and her husband, Ira Raymond Taylor, to Dishman, and Dishman's lease to the appellee Sun Oil Company, the appellee has shown itself entitled to injunctive relief to the extent granted by the trial court in its order. The appellee by virtue of these instruments showed itself to be in the position of a cotenant with the appellants, even if the appellants should prevail in the trial of the main suit in trespass to try title. On the authority of Stanolind Oil & Gas Co. v. Wimberly, Tex.Civ.App., 181 S.W.2d 942 and cases cited therein, the trial court was fully authorized in its discretion to issue the temporary writ of injunction here, permitting the appellee to go upon the land and drill for oil and gas without interference from the appellants.

The appellants' 4th, 5th and 6th points are overruled.

The judgment of the trial court is affirmed.